## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MATTHEW D. WILLIAMS,　　　　　　)
on behalf of plaintiff and a class,　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
RUSHMORE LOAN MANAGEMENT　)
SERVICES, LLC;　　　　　　　　　)
MCCALLA RAYMER LEIBERT　　　)
PIERCE, LLC, successor by merger to　)
Hunt Leibert Jacobson, P.C.; and　　　)
GMAT LEGAL TITLE TRUST 2013-1,　)
also known as GMAT 2013-1 TRUST,　)
by U.S. BANK, NATIONAL　　　　　)
ASSOCIATION,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　)

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.　　　Plaintiff Matthew D. Williams brings this action to secure redress from unlawful credit and collection practices engaged in by defendants Rushmore Loan Management Services LLC ("Rushmore"), Mccalla Raymer Leibert Pierce, LLC, successor by merger to Hunt Leibert Jacobson, P.C. ("McCalla"), and GMAT Legal Title Trust 2013-1, also known as GMAT Trust 2013-1, by U.S. Bank, National Association, as trustee ("GMAT 2013"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2.　　　The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.　　　In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

1

debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

4.    Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.    The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.    Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq.*

## VENUE AND JURISDICTION

7.    This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

8.    Venue and personal jurisdiction in this District are proper because:

    a.    Defendants' collection activities impacted plaintiff within this District;

    b.    Each defendant does or transacts business within this District.

## PARTIES

9.    Plaintiff Matthew D. Williams resides in Madison, CT, in a home which he owns.

10.    Defendant Rushmore is a limited liability company organized under Delaware law with principal offices at 15480 Laguna Canyon Road, Irvine, CA 92618 and additional offices in Texas and Puerto Rico.

11.    Rushmore holds itself out as a "special servicer" of residential mortgage loans and obtains ratings as such. (Appendices A-C) A "special servicer" is mortgage industry jargon for a servicer that acquires the servicing of non-performing, or defaulted, loans, as opposed to loans on which payments are made. Rushmore has acquired servicing of more than $260 million

2

in defaulted loans. (Appendix A) The servicing of defaulted loans is a regular part of Rushmore's business.

12.    Rushmore services loans owned by others.

13.    Rushmore uses the mails and telephone system in conducting its business.

14.    Rushmore is a debt collector as defined in the FDCPA.

15.    Defendant McCalla Raymer Leibert Pierce, LLC ("McCalla") is a law firm organized as a Georgia limited liability company. It is the successor by merger to Hunt Leibert Jacobson, P.C., and responsible for its liabilities. Its principal office is located at 1544 Old Alabama Road, Roswell, GA, 30076. It also has offices at 50 Weston Street, Hartford, CT 06120, as well as at more than a dozen other locations.

16.    McCalla describes its practice (http://www.mccalla.com/about-us.html) as follows: "McCalla Raymer Leibert Pierce, LLC is a leading provider of legal services to the financial services and mortgage banking industries in the states of Alabama, Florida, Georgia, Illinois, and Mississippi. . . . The firm handles . . . residential and commercial foreclosures . . . bankruptcies, evictions, and related litigation matters for many of the nation's largest financial institutions. McCalla Raymer Leibert Pierce, LLC's footprint covers the states of Alabama, Connecticut, Florida, Georgia, Illinois and Mississippi with both brick and mortar offices and dedicated on site attorneys physically located in these jurisdictions. In concentrating the practice on the representation of banks, credit unions, investors, hedge funds, and large mortgage servicing entities, McCalla Raymer Leibert Pierce, LLC has earned a reputation as a leader in the financial services and mortgage banking industries, working in tandem with its clients to achieve their goals and minimize their risk."

17.    McCalla uses the mails and telephone system in conducting business.

18.    McCalla is a debt collector subject to the FDCPA.

19.    Defendant GMAT 2013 is a Delaware statutory trust. It calls itself GMAT Legal Title Trust 2013-1 in legal pleadings. According to the Secretary of State of Delaware, its

3

correct legal name is GMAT Trust 2013-1.  Its trustee and registered agent is U.S. Bank Trust, National Association, 300 Delaware Avenue, 9th Floor, Wilmington, DE 19801.

20.     GMAT 2013 is in the business of acquiring defaulted mortgage loans and enforcing them by legal action, filing claims in bankruptcies, and otherwise.  It has done so on scores or hundreds of occasions.  It is frequently if not always represented by Rushmore in doing so.  On information and belief, GMAT 2013 does not acquire nondefaulted or performing mortgage loans.

21.     The mails and telephone system are used in connection with such activities.

22.     GMAT 2013 is therefore a debt collector as defined in the FDCPA.

## FACTS

23.     On information and belief, Rushmore acquired servicing of plaintiff's loan in June 2013, after it was in default.

24.     The loan was accelerated substantially prior to June 2013.

25.      GMAT 2013 claims to have acquired ownership of the loan on or about February 15, 2014, after the loan was in default.

26.     On July 21, 2016, Rushmore caused a foreclosure lawsuit to be filed against plaintiff Matthew D. Williams.  The lawsuit was filed in the name of GMAT 2013, as alleged owner of the loan.   Hunt Leibert Jacobson, P.C., now McCalla, was counsel for GMAT 2013.  A copy of the complaint and accompanying documents is attached as Appendix D.

27.     On August 2, 2016, Rushmore sent the letter attached as Appendix E, seeking payment of late charges.

## COUNT I – FDCPA

28.     Plaintiff incorporates paragraphs 1-27.

29.     The debt which defendants sought payment for through the foreclosure complaint and Appendix E included late fees for periods after the loan had been accelerated, as shown by Appendix E.

4

30.    It is the policy and practice of defendants to seek late fees for periods after the loan had been accelerated.

31.    A mortgagee or servicer is not entitled to late fees after acceleration. *Wells Fargo Bank Minnesota N.A. v. Guarnieri*, 308 B.R. 122, 127 (D.Conn. 2004); *FDIC v. M.F.P. Realty Associates*, 870 F.Supp. 451, 455 (D.Conn. 1994); *SKW Real Estate LP v. Gallicchio*, 49 Conn. App. 563, 580, 716 A.2d 903, 918 (1998); *Berkeley Federal v. Ogalin*, 48 Conn.App. 305, 213, 708 A.2d 620, 625 (1998); *FDIC v. Napert-Boyer P'ship*, 40 Conn. App. 434, 443, 671 A.2d 1303, 1308-09 (1996).

32.    Defendants thereby violated 15 U.S.C. §§1692e, 1692e(2), 1692e(10), 1692f and 1692f(1).

33.    Section 1692e provides:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of--**

    **(A) the character, amount, or legal status of any debt; . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

34.    Section 1692f provides:

**§ 1692f. Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

5

## CLASS ALLEGATIONS

35.     Plaintiff brings this claim on behalf of three classes, pursuant to Fed.R.Civ.P.
23(a) and 23(b)(3).

36.     Class A consists of (a) all individuals (b) from whom Rushmore sought (by
any means) late charges (c) incurred after acceleration of a loan (d) at any time during a period
beginning one year prior to the filing of this action and ending 21 days after the filing of this
action.

37.     Class B consists of (a) all individuals (b) from whom McCalla sought (by
any means) late charges (c) incurred after acceleration of a loan (d) at any time during a period
beginning one year prior to the filing of this action and ending 21 days after the filing of this
action.

38.     Class C consists of (a) all individuals (b) where late charges were sought on
behalf of GM AT 2013 (by any means) (c) incurred after acceleration of a loan (d) at any time
during a period beginning one year prior to the filing of this action and ending 21 days after the
filing of this action.

39.     On information and belief each class is so numerous that joinder of all members is
not practicable.

40.     There are questions of law and fact common to the class members, which
common questions predominate over any questions relating to individual class members. The
predominant common questions are (a) whether defendants engage in a practice of assessing late
charges after acceleration and (b) whether such practice violates the FDCPA.

41.     Plaintiffs claim is typical of the claims of the class members. All are based on the
same factual and legal theories.

42.     Plaintiff will fairly and adequately represent the class members. Plaintiff has
retained counsel experienced in class actions and FDCPA litigation.

43.     A class action is superior for the fair and efficient adjudication of this matter, in

that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement
mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendants for:

      i.      Statutory damages;

      ii.      Actual damages, including all post-acceleration late charges
collected;

      iii.      Attorney's fees, litigation expenses and costs of suit;

      iv.      Such other and further relief as the Court deems proper.

## COUNT II – FDCPA

44.      Plaintiff incorporates paragraphs 1-27.

45.      The seventh page of Appendix D consisted of a purported 15 U.S.C. §1692g notice.

46.      The inclusion of such a notice with a complaint is not required.

47.      The inclusion of such a notice with a complaint is confusing to the least sophisticated consumer, in that it suggests a means of responding to the complaint other than as specified in the summons. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808 (7th Cir. 2016).

48.      Defendants' notice did not warn that the consumer should comply with the instructions in the summons notwithstanding the notice.

49.      The inclusion of such notice violates 15 U.S.C. §1692e.

7

## CLASS ALLEGATIONS

50.     Plaintiff brings this claim on behalf of three classes, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

51.     Class A consists of (a) all individuals (b) against whom Rushmore caused to be filed a foreclosure complaint (c) which included a page describing  validation or dispute rights similar to those in §1692g (d) at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.'

52.     Class B consists of (a) all individuals (b) against whom McCalla filed a foreclosure complaint (c) which included a page describing  validation or dispute rights similar to those in §1692g (d) at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

53.     Class C consists of (a) all individuals (b) against whom GMAT 2013 filed a foreclosure complaint (c) which included a page describing  validation or dispute rights similar to those in §1692g (d) at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

54.     On information and belief, each class is so numerous that joinder of all members is not practicable.

55.     There are questions of law and fact common to the class members, which common  questions predominate over any questions relating to individual class members.  The predominant common questions are (a) whether each defendant included a page describing validation or dispute rights similar to those in §1692g with a foreclosure complaint and (b) whether such practice violates the FDCPA.

56.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

57.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

8

58. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

. b. Members of the class are likely to be unaware of their rights;

c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendants for:

i.      Statutory damages;

ii.     Attorney's fees, litigation expenses and costs of suit;

iii.    Such other and further relief as the Court deems proper.

THE PLAINTIFF

BY /s/ Joanne S. Faulkner
Joanne S. Faulkner ct04137
faulknerlawoffice@snet.net
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395

pro hac vice admission to be sought

Daniel A. Edelman
Cathleen M. Combs
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312)739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

# APPENDIX A

**FOR IMMEDIATE RELEASE**

### New Industry Recognition and Growth at Rushmore Loan Management Services LLC

*Standard & Poor's Raised Special Servicer Rating to Above Average*

*Rushmore to Begin Servicing an Additional $260 Million in Mortgage Assets in Puerto Rico*

**Irvine, Calif. – April 6, 2015 -** Rushmore Loan Management Services LLC , a national residential mortgage loan servicer of performing, re-performing and non-performing loans , announced today that Standard & Poor's (S&P) raised its special servicer rating for Rushmore from Average to Above Average in the second annual review of the platform. They also affirmed an Average ranking as a residential primary servicer.  Additionally, Rushmore recently received its first platform review from Fitch with a favorable rating of RPS3 and RSS3 for primary and special servicing. Rushmore also announced that it will begin servicing an additional $260 million in mortgage assets in its San Juan, Puerto Rico-based branch, bringing the total assets serviced in Puerto Rico to approximately $1 billion.

*Positive Ratings*

The S&P report noted several positive highlights at Rushmore including the experienced management and staff, the increased special servicing portfolio, its technology platform, expanded auditing mechanisms and good oversight. The report also noted Rushmore's ability to further strengthen its infrastructure and internal controls, while maintaining solid servicing performance compared to its peers.

In its first annual review by Fitch, the Company was cited and assigned RPS3 and RSS3 Fitch ratings for primary and special residential mortgage-servicer with a stable outlook. The Fitch report noted Rushmore's "high-touch" servicing model as a key strength for the mortgage servicer. Fitch specifically called attention to the role of Rushmore's experienced account resolution specialists. The Company's process enables these staff members to serve as single points of contact for mortgage holders.

"These ratings reflect Rushmore's commitment to excellence in the mortgage-servicing industry," said Rushmore CEO Terry Smith. "I find it significant that these ratings note the important role of our dedicated staff as a key to our success – a well-deserved recognition."

*New $260M Performing Loan Portfolio*

Additionally, Rushmore will begin servicing a new pool in excess of $260 million of non-performing loans purchased in a joint venture by a group of investors. Roosevelt Management Company LLC, the parent company of Rushmore, acts as investment advisor and asset manager on behalf of the joint venture, while Rushmore will service the Puerto Rico assets primarily in their San Juan platform.

"Opening our operations in San Juan has been an important component of Rushmore's strategic growth plan, of which we are very proud," said Smith. "We are committed to developing our on-island capabilities and continue to look for opportunities to invest in and service residential loans in Puerto Rico."

Rushmore, which is licensed in all 50 states, DC and Puerto Rico, has locations in Dallas, Texas; Irvine, California; and San Juan, Puerto Rico. It is an approved government-sponsored enterprise seller/servicer for Fannie Mae, Freddie Mac and a Ginnie Mae issuer. Rushmore currently services more than 70,000 loans, at a total unpaid principle balance of over $12 billion. Rushmore has also been reviewed and approved by DBRS and Kroll.

To learn more about Rushmore or for additional information about the Standard & Poor's and Fitch ratings, visit www.rushmorelm.com.

**About Rushmore Loan Management Services LLC**
Rushmore, headquartered in Irvine, California, is a national high-touch residential mortgage loan servicer of performing, re-performing and non-performing loans, as well as a national wholesale loan originator. Rushmore is licensed in all 50 states and Puerto Rico, and is approved with Fannie Mae, Freddie Mac, Ginnie Mae, HUD and USDA. Rushmore is known in the industry as a high-touch servicer and wholesale loan originator with state of the art technology, providing responsive and personalized service to borrowers, broker clients and investors.

###

**Media Contact:**
Hope Margarit
Director of Marketing & Communications
hmargarit@rushmorelm.com
949-341-5748

# APPENDIX B

3/26/2017                    Moody's assigns an SQ assessment of SQ3 to Rushmore Loan Management Services as a special servicer

About Moody's   |   Careers | Regulatory Affairs | Terms of Use | Contact Us

    GO

**Research & Ratings**        **Products & Solutions**        **News & Events**                                    Log In    Register

## Moody's
### INVESTORS SERVICE                                                   Print    Export PDF                    G+1

---

### Announcement: Moody's assigns an SQ assessment of SQ3 to Rushmore Loan Management Services as a special servicer

Global Credit Research - 15 Aug 2016

**U.S. Residential Mortgage Servicer Assessment Actions**

New York, August 15, 2016 — Moody's Investors Service has assigned an SQ assessment of SQ3 to Rushmore Loan Management Services ("Rushmore") as a special servicer of residential mortgage loans. The special servicing SQ assessment is based on the company's average collection abilities, average loss mitigation results, average foreclosure and REO timeline management, average loan administration and below average servicing stability.

Rushmore is an originator, servicer, and special servicer of mortgage loans. Acquired by Roosevelt Management Company (Roosevelt) in August 2010, the company has servicing and origination locations in Irvine, California, San Juan, Puerto Rico and Dallas, Texas. Roosevelt, an investment advisor and manager, is funded by a private equity fund.

As of 30 June 2016, Rushmore's residential mortgage servicing portfolio (excluding REO) contained 72,781 loans with an unpaid principal balance of approximately $13.4 billion, an increase from 59,303 loans for an unpaid principal balance of $10.5 billion as of year-end 2015.

ASSESSMENT RATIONALE

We view Rushmore's collection abilities as average. Rushmore operates a blended customer service and collections call center in Irvine, California and Dallas, Texas. The company is planning to expand its customer service and early stage call center to include an offshore vendor in Manila, starting with a pilot program of 25 agents. All calls are recorded, and an external vendor performs call monitoring to ensure call center agent performance. Call center agents can earn incentive for achieving desired performance levels. Outbound calls are ranked using a proprietary risk scoring model. Call center metrics appeared solid compared to peers.

We view Rushmore's loss mitigation abilities as average. An Asset Resolution Specialist (ARS) is assigned to each borrower at 35 past due and a SPOC letter is sent out at 45 past due, showing the borrower's loss mitigation options. The ARS model includes a true ownership cradle to grave approach that uses a proprietary loss mitigation application to help decision the best loss mitigation solution for the borrower. The loss mitigation software contains workflow functionality as well as a rules-based decision engine, but does not run an NPV analysis against foreclosure options or suggest alternative options. Finally, Rushmore provides a dedicated in-flight loss mitigation employee to coordinate with the prior servicer and ensure the loss mitigation process resolves.

We view Rushmore's foreclosure and REO timeline abilities as average. A pre-foreclosure committee with diverse representation meets at least weekly to determine whether to refer a loan to foreclosure. Affidavits and other executable foreclosure documents are compiled and reviewed by one of the company's offshore vendors before being signed onshore. A dedicated employee monitors in-flight foreclosures and ensures they are resolved. Rushmore's REO group provides oversight over the REO functions provided by Rushmore's REO subsidiary, Dakota.

We view Rushmore's loan administration abilities as average. The company maintains a secure cash processing room with video camera surveillance to manually process payments. Rushmore uses Wells Fargo as its lockbox vendor. The company performs daily account reconciliations on its clearing accounts and monthly on its custodial accounts. Rushmore outsources its tax and insurance processing and does not receive commission on force-placed insurance.

We view Rushmore's servicing stability as below average. Positives include stable ownership by its equity investors, very strong profitability and capital levels though we expect these ratios to moderate as the company grows. Factors that constrain the stability component include limited operating history and modest franchise in the highly fragmented US residential mortgage market.

Moody's SQ assessments represent its view of a servicer's ability to prevent or mitigate asset pool losses across changing markets. The assessment scale ranges from SQ1 (strong) to SQ5 (weak). Where appropriate, a "+" or "-" modifier will be appended to the relevant assessment to indicate a servicer's relative servicing quality within a particular category. Moody's servicer assessments are differentiated in the marketplace by focusing on performance management. SQ assessments for U.S. residential mortgage servicers incorporate assessments of delinquency transition rates, foreclosure timeline management, loan cure rates, recoveries, loan resolution outcomes, and REO management — all critical indicators of a servicer's ability to maximize returns from mortgage portfolios.

Moody's servicer assessments also consider the company's ability to maintain its focus on high quality servicing in an economic downturn. Servicing operations can be stressed by increasing the number of delinquent loans while at the same time increasing the need for liquidity. The SQ assessment reflects our expectation of the impact that the servicing will have on the on-going credit performance of the portfolio. For this reason, Moody's monitors SQ assessments based on periodic information provided by servicers and conducts a formal re-evaluation of its servicer assessments annually.

The methodology used in this analysis was "Moody's Methodology for Assessing RMBS Servicer Quality (SQ)" published in January 2013. Please see the Ratings Methodologies page on www.moodys.com for a copy of this methodology.

REGULATORY DISCLOSURES

For any affected securities or rated entities receiving direct credit support from the primary entity(ies) of this credit rating action, and whose ratings may change as a result of this credit rating action, the associated regulatory disclosures will be those of the guarantor entity. Exceptions to this approach exist for the following disclosures, if applicable to jurisdiction: Ancillary Services, Disclosure to rated entity, Disclosure from rated entity.

Please see Moody's Rating Symbols and Definitions on the Ratings Definitions page on www.moodys.com for further information on the meaning of each rating category and the definition of default and recovery.

**Related Issuers**

Rushmore Loan Management Services LLC

---

**Related Research**

Assessment: Rushmore Loan Management Services: Assessment as a Special Servicer of Residential Mortgage Loans

Please see Moody's Rating Symbols and Definitions on the Ratings Definitions page on www.moodys.com for further information on the time horizon in which a credit rating action may be expected after a review or outlook action took place.

Please see the ratings tab on the issuer page on www.moodys.com for the last action and the history of the rating. The date on which some ratings were first released goes back to a time before Moody's ratings were fully digitized and accurate data may not be available. Consequently, Moody's provides a date that it believes is the most reliable and accurate based on the information that is available to it. Please see the ratings disclosure page on our website www.moodys.com/disclosures for further information.

Please see the ratings disclosure page on www.moodys.com/disclosures for disclosures on significant Moody's shareholders and on certain relationships between Moody's, its shareholders and/or rated issuers.

Please see www.moodys.com for any updates on changes to the lead rating analyst and to the Moody's legal entity that has issued the rating.

This publication does not announce a credit rating action. For any credit ratings referenced in this publication, please see the ratings tab on the issuer/entity page on www.moodys.com for the most updated credit rating action information and rating history.

Francis Wissman
Asst Vice President - Analyst
Structured Finance Group
Moody's Investors Service, Inc.
250 Greenwich Street
New York, NY 10007
U.S.A.
JOURNALISTS: 212-553-0376
SUBSCRIBERS: 212-553-1653

William Fricke
VP - Senior Credit Officer
Structured Finance Group
JOURNALISTS: 212-553-0376
SUBSCRIBERS: 212-553-1653

Releasing Office:
Moody's Investors Service, Inc.
250 Greenwich Street
New York, NY 10007
U.S.A.
JOURNALISTS: 212-553-0376
SUBSCRIBERS: 212-553-1653



Moody's
INVESTORS SERVICE

© 2017 Moody's Corporation, Moody's Investors Service, Inc., Moody's Analytics, Inc. and/or their licensors and affiliates (collectively, "MOODY'S"). All rights reserved.

CREDIT RATINGS ISSUED BY MOODY'S INVESTORS SERVICE, INC. AND ITS RATINGS AFFILIATES ("MIS") ARE MOODY'S CURRENT OPINIONS OF THE RELATIVE FUTURE CREDIT RISK OF ENTITIES, CREDIT COMMITMENTS, OR DEBT OR DEBT-LIKE SECURITIES, AND MOODY'S PUBLICATIONS MAY INCLUDE MOODY'S CURRENT OPINIONS OF THE RELATIVE FUTURE CREDIT RISK OF ENTITIES, CREDIT COMMITMENTS, OR DEBT OR DEBT-LIKE SECURITIES. MOODY'S DEFINES CREDIT RISK AS THE RISK THAT AN ENTITY MAY NOT MEET ITS CONTRACTUAL, FINANCIAL OBLIGATIONS AS THEY COME DUE AND ANY ESTIMATED FINANCIAL LOSS IN THE EVENT OF DEFAULT. CREDIT RATINGS DO NOT ADDRESS ANY OTHER RISK, INCLUDING BUT NOT LIMITED TO: LIQUIDITY RISK, MARKET VALUE RISK, OR PRICE VOLATILITY. CREDIT RATINGS AND MOODY'S OPINIONS INCLUDED IN MOODY'S PUBLICATIONS ARE NOT STATEMENTS OF CURRENT OR HISTORICAL FACT. MOODY'S PUBLICATIONS MAY ALSO INCLUDE QUANTITATIVE MODEL-BASED ESTIMATES OF CREDIT RISK AND RELATED OPINIONS OR COMMENTARY PUBLISHED BY MOODY'S ANALYTICS, INC. CREDIT RATINGS AND MOODY'S PUBLICATIONS DO NOT CONSTITUTE OR PROVIDE INVESTMENT OR FINANCIAL ADVICE, AND CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT AND DO NOT PROVIDE RECOMMENDATIONS TO PURCHASE, SELL, OR HOLD PARTICULAR SECURITIES. NEITHER CREDIT RATINGS NOR MOODY'S PUBLICATIONS COMMENT ON THE SUITABILITY OF AN INVESTMENT FOR ANY PARTICULAR INVESTOR. MOODY'S ISSUES ITS CREDIT RATINGS AND PUBLISHES MOODY'S PUBLICATIONS WITH THE EXPECTATION AND UNDERSTANDING THAT EACH INVESTOR WILL, WITH DUE CARE, MAKE ITS OWN STUDY AND EVALUATION OF EACH SECURITY THAT IS UNDER CONSIDERATION FOR PURCHASE, HOLDING, OR SALE.

MOODY'S CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT INTENDED FOR USE BY RETAIL INVESTORS AND IT WOULD BE RECKLESS AND INAPPROPRIATE FOR RETAIL INVESTORS TO USE MOODY'S CREDIT RATINGS OR MOODY'S PUBLICATIONS WHEN MAKING AN INVESTMENT DECISION. IF IN DOUBT YOU SHOULD CONTACT YOUR FINANCIAL OR OTHER PROFESSIONAL ADVISER.

ALL INFORMATION CONTAINED HEREIN IS PROTECTED BY LAW, INCLUDING BUT NOT LIMITED TO, COPYRIGHT LAW, AND NONE OF SUCH INFORMATION MAY BE COPIED OR OTHERWISE REPRODUCED, REPACKAGED, FURTHER TRANSMITTED, TRANSFERRED, REDISTRIBUTED OR RESOLD, OR STORED FOR SUBSEQUENT USE FOR ANY SUCH PURPOSE, IN WHOLE OR IN PART, IN ANY FORM OR MANNER OR BY ANY MEANS WHATSOEVER, BY ANY PERSON WITHOUT MOODY'S PRIOR WRITTEN CONSENT.

All information contained herein is obtained by MOODY'S from sources believed by it to be accurate and reliable. Because of the possibility of human or mechanical error as well as other factors, however, all information contained herein is provided "AS IS" without warranty of any kind. MOODY'S adopts all necessary measures so that the information it uses in assigning a credit rating is of sufficient quality and from sources MOODY'S considers to be reliable including, when appropriate, independent third-party sources. However, MOODY'S is not an auditor and cannot in every instance independently verify or validate information received in the rating process or in preparing the Moody's publications.

To the extent permitted by law, MOODY'S and its directors, officers, employees, agents, representatives, licensors and suppliers disclaim liability to any person or entity for any indirect, special, consequential, or incidental losses or damages whatsoever arising from or in connection with the information contained herein or the use or inability to use any such information, even if MOODY'S or any of its directors, officers, employees, agents, representatives, licensors or suppliers is advised in advance of the possibility of such losses or damages, including but not limited to: (a) any loss of present or prospective profits or (b) any loss or damage arising where the relevant financial instrument is not the subject of a particular credit rating assigned by MOODY'S.

To the extent permitted by law, MOODY'S and its directors, officers, employees, agents, representatives, licensors and suppliers disclaim liability for any direct or compensatory losses or damages caused to any person or entity, including but not limited to by any negligence (but excluding fraud, willful misconduct or any other type of liability that, for the avoidance of doubt, by law cannot be excluded) on the part of, or any contingency within or beyond the control of, MOODY'S or any of its directors, officers, employees, agents, representatives, licensors or suppliers, arising from or in connection with the information contained herein or the use or inability to use any such information.

NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE ACCURACY, TIMELINESS, COMPLETENESS, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY SUCH RATING OR OTHER OPINION OR INFORMATION IS GIVEN OR MADE BY MOODY'S IN ANY FORM OR MANNER WHATSOEVER.

Moody's Investors Service, Inc., a wholly-owned credit rating agency subsidiary of Moody's Corporation ("MCO"), hereby discloses that most issuers of debt securities (including corporate and municipal bonds, debentures, notes and commercial paper) and preferred stock rated by Moody's Investors Service, Inc. have, prior to assignment of any rating, agreed to pay to Moody's Investors Service, Inc. for appraisal and rating services rendered by it fees

3/26/2017                                 Moody's assigns an SQ assessment of SQ3 to Rushmore Loan Management Services as a special servicer

ranging from \$1,500 to approximately \$2,500,000. MCO and MIS also maintain policies and procedures to address the independence of MIS's ratings and rating processes. Information regarding certain affiliations that may exist between directors of MCO and rated entities, and between entities who hold ratings from MIS and have also publicly reported to the SEC an ownership interest in MCO of more than 5%, is posted annually at www.moodys.com under the heading "Investor Relations — Corporate Governance — Director and Shareholder Affiliation Policy."

Additional terms for Australia only: Any publication into Australia of this document is pursuant to the Australian Financial Services License of MOODY'S affiliate, Moody's Investors Service Pty Limited ABN 61 003 399 657AFSL 336969 and/or Moody's Analytics Australia Pty Ltd ABN 94 105 136 972 AFSL 383569 (as applicable). This document is intended to be provided only to "wholesale clients" within the meaning of section 761G of the Corporations Act 2001. By continuing to access this document from within Australia, you represent to MOODY'S that you are, or are accessing the document as a representative of, a "wholesale client" and that neither you nor the entity you represent will directly or indirectly disseminate this document or its contents to "retail clients" within the meaning of section 761G of the Corporations Act 2001. MOODY'S credit rating is an opinion as to the creditworthiness of a debt obligation of the issuer, not on the equity securities of the issuer or any form of security that is available to retail investors. It would be reckless and inappropriate for retail investors to use MOODY'S credit ratings or publications when making an investment decision. If in doubt you should contact your financial or other professional adviser.

Additional terms for Japan only: Moody's Japan K.K. ("MJKK") is a wholly-owned credit rating agency subsidiary of Moody's Group Japan G.K., which is wholly-owned by Moody's Overseas Holdings Inc., a wholly-owned subsidiary of MCO. Moody's SF Japan K.K. ("MSFJ") is a wholly-owned credit rating agency subsidiary of MJKK. MSFJ is not a Nationally Recognized Statistical Rating Organization ("NRSRO"). Therefore, credit ratings assigned by MSFJ are Non-NRSRO Credit Ratings. Non-NRSRO Credit Ratings are assigned by an entity that is not a NRSRO and, consequently, the rated obligation will not qualify for certain types of treatment under U.S. laws. MJKK and MSFJ are credit rating agencies registered with the Japan Financial Services Agency and their registration numbers are FSA Commissioner (Ratings) No. 2 and 3 respectively.

MJKK or MSFJ (as applicable) hereby disclose that most issuers of debt securities (including corporate and municipal bonds, debentures, notes and commercial paper) and preferred stock rated by MJKK or MSFJ (as applicable) have, prior to assignment of any rating, agreed to pay to MJKK or MSFJ (as applicable) for appraisal and rating services rendered by it fees ranging from JPY200,000 to approximately JPY350,000,000.

MJKK and MSFJ also maintain policies and procedures to address Japanese regulatory requirements.

| **Moody's Integrity Hotline** | Browse By | Contact Us | Terms & Conditions |
|---|---|---|---|
| **EU**<br>001-800-506-1440 | Home | Help & Support | Terms of Use |
|  | Research & Ratings | Contact Us | Privacy Policy |
| **Japan**<br>KDDI: 00-539-111 then 888-320-1668<br>NTT: 0034-811-001 then 888-320-1668 | Products & Solutions | Submit a Complaint | Proprietary Rights |
|  | News & Events |  |  |
| **Outside of the EU and Japan**<br>1-866-330-MDYS (6397) | Careers |  |  |

© 2017 Moody's Investors Service, Inc., Moody's Analytics, Inc. and/or their affiliates and licensors. All rights reserved.     Regional Sites: Global ▼

# APPENDIX C



# Fitch Upgrades Rushmore Loan Management Services' U.S. RMBS Servicer Ratings

June 01, 2016 05:59 PM Eastern Daylight Time

NEW YORK--(BUSINESS WIRE)--Fitch Ratings has upgraded Rushmore Loan Management Services' (Rushmore) U.S. residential mortgage servicer ratings as follows:

--U.S. residential primary servicer rating for Prime product to 'RPS3+' from 'RPS3'; Outlook Stable;

--U.S. residential primary servicer rating for Subservicing to 'RPS3+' from 'RPS3'; Outlook Stable;

--U.S. residential special servicer rating to 'RSS3+' from 'RSS3'; Outlook Stable.

The rating upgrades and Stable Outlook are based on enhancements to Rushmore's servicing platform, robust high-touch servicing model, integrated servicing technology, and comprehensive internal control environment. The ratings also reflect the financial condition of Rushmore, a non-publicly rated entity.

Rushmore has experience in servicing performing, re-performing and nonperforming loans, and is an approved seller/servicer for Fannie Mae, Freddie Mac and Ginnie Mae. Rushmore has servicing sites in Irvine CA, Dallas TX, and Puerto Rico. The Puerto Rico site was established to handle default servicing on loans secured by properties located in Puerto Rico. Rushmore also utilizes the Puerto Rico site for a number of back-office functions, in addition to a pilot program for call center functions that would leverage bi-lingual reps, for loans it services in the U.S. As of March 31, 2016, Rushmore was servicing more than 62,000 loans totaling $11.9 billion, an increase from approximately 46,000 loans totaling $9.1 billion as of March 31, 2015.

Rushmore continues to enhance its operational capabilities in loan administration and defaulted loan management, and has expanded its management, supervisor, and staffing levels as well as its off-shore capacity to accommodate its portfolio growth. In addition, Rushmore separated and internalized certain functions that had been handled on a shared basis with its parent, Roosevelt Management Company (Roosevelt).

Technology investments during the current review period include the implementation of a number of proprietary systems comprising an ARM and modified loan auditing system, an MI claim tracking system, and an SCRA tracking system. Rushmore also redesigned its borrower website to include more self-service features.

Rushmore has a robust single-point-of-contact (SPOC) model, in which all loans 45 or more days past due or identified as being in imminent default are assigned an account resolution specialist (ARS).

Rushmore's internal control environment incorporates an enterprise risk management (ERM) committee that meets monthly to identify, manage and report on the overall risks across the company. The ERM committee reviews findings from quality control, compliance, quality assurance, and internal audit. Internal audit is outsourced to an established independent auditing firm. Since Fitch's prior review, Rushmore completed its initial Regulation AB (Reg AB) report for the year ended Dec 31, 2015, which did not contain any instances of material non-compliance.

Rushmore is a wholly-owned subsidiary of Roosevelt, an investment management firm and asset manager of residential mortgage loans and REO assets. Since Fitch's prior review, majority ownership of Roosevelt was transferred to a newly created fund, President Residential Mortgage Partners, LP. According to the company, the new fund focuses on residential mortgage investments, and provides a significantly extended investment horizon and refreshed access to capital for the platform compared to the fund that was previously the majority owner.

Additional information is available at 'www.fitchratings.com'.

Applicable Criteria

U.S. Residential and Small Balance Commercial Mortgage Servicer Rating Criteria -- Effective January 31, 2011 to January 30, 2014 (pub. 31 Jan 2011)

https://www.fitchratings.com/creditdesk/reports/report_frame.cfm?rpt_id=600065

Additional Disclosures

Solicitation Status

https://www.fitchratings.com/gws/en/disclosure/solicitation?pr_id=1005451

Endorsement Policy

https://www.fitchratings.com/jsp/creditdesk/PolicyRegulation.faces?context=2&detail=31

ALL FITCH CREDIT RATINGS ARE SUBJECT TO CERTAIN LIMITATIONS AND DISCLAIMERS. PLEASE READ THESE LIMITATIONS AND DISCLAIMERS BY FOLLOWING THIS LINK: HTTP://FITCHRATINGS.COM/UNDERSTANDINGCREDITRATINGS. IN ADDITION, RATING DEFINITIONS AND THE TERMS OF USE OF SUCH RATINGS ARE AVAILABLE ON THE AGENCY'S PUBLIC WEBSITE 'WWW.FITCHRATINGS.COM'. PUBLISHED RATINGS, CRITERIA AND METHODOLOGIES ARE AVAILABLE FROM THIS SITE AT ALL TIMES. FITCH'S CODE OF CONDUCT, CONFIDENTIALITY, CONFLICTS OF INTEREST, AFFILIATE FIREWALL, COMPLIANCE AND OTHER RELEVANT POLICIES AND PROCEDURES ARE ALSO AVAILABLE FROM THE 'CODE OF CONDUCT' SECTION OF THIS SITE. FITCH MAY HAVE PROVIDED ANOTHER PERMISSIBLE SERVICE TO THE RATED ENTITY OR ITS RELATED THIRD PARTIES. DETAILS OF THIS SERVICE FOR RATINGS FOR WHICH THE LEAD ANALYST IS BASED IN AN EU-REGISTERED ENTITY CAN BE FOUND ON THE ENTITY SUMMARY PAGE FOR THIS ISSUER ON THE FITCH WEBSITE.

# Contacts
Fitch Ratings
Primary Analyst
Thomas Crowe
Senior Director
+1 212-908-0227
Fitch Ratings, Inc.
33 Whitehall St
New York, NY 10004
or
Secondary Analyst
Michael Laidlaw
Director
+1 212-908-0251

or
Committee Chairperson
Roelof Slump
Managing Director
+1 212-908-0705
or
Media Relations, New York
Sandro Scenga, +1 212-908-0278
sandro.scenga@fitchratings.com

# **APPENDIX D**

RETURN DATE:    JUNE 28, 2016        : SUPERIOR COURT

                    :

GMAT LEGAL TITLE TRUST 2013-1, U.S. BANK,    :

NATIONAL ASSOCIATION, AS LEGAL TITLE    : JUDICIAL DISTRICT

TRUSTEE    : OF NEW HAVEN

    :

             Plaintiff    :

    : AT NEW HAVEN

VS    :

    :

MATTHEW D. WILLIAMS, LISA A. WILLIAMS,    :

UNITED STATES OF AMERICA, and    :

STATE OF CONNECTICUT    :

          Defendants    : JUNE 8, 2016

## COMPLAINT

      The Plaintiff, GMAT Legal Title Trust 2013-1, U.S. Bank, National Association, as Legal Title Trustee (the "Plaintiff"), by its attorneys, Hunt Leibert Jacobson, P.C., for its Complaint against the Defendants herein, hereby alleges as follows:

      1.     The Plaintiff is a Trustee of a Trust with its office and principal place of business at 60 Livingston Ave., EP-MN-WS3D, St. Paul, Minnesota 55107.

      2.     The Defendant, Matthew D. Williams, is a Connecticut resident with a residence at 226 Scotland Road, Madison, Connecticut 06443.

      3.     The Defendant, Lisa A. Williams, is a Connecticut resident with a residence at 36 Bliss Memorial Drive, Unionville, Connecticut 06085.

      4.     The Defendant, the United States of America, is a sovereign nation with an address at 157 Church Street, Floor 25, New Haven, Connecticut, 06510 and also at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

1

5.     The Defendant, the State of Connecticut, is a sovereign state with an address at 55 Elm Street, Hartford, CT 06106.

6.     On or about December 29, 2008, the Defendants, Matthew D. Williams and Lisa A. Williams, executed and delivered to Society Financial Corporation, an Adjustable Rate Note (the "Note") for a loan in the original principal amount of $385,700.00. A true and accurate copy of the original Note, with Allonges, is attached hereto as **Exhibit "A"** and is incorporated by reference.

7.     The original Note is in the physical possession of the Plaintiff's counsel.

8.     On or about December 29, 2008, to secure the Note, the Defendants, Matthew D. Williams and Lisa A. Williams, did execute and deliver to Mortgage Electronic Registration Systems, Inc. as Nominee for Society Financial Corporation, a Mortgage on the Property. The Mortgage was dated December 29, 2008 and recorded January 6, 2009 in Volume 1592 at Page 337 of the Madison Land Records. A true and accurate copy of the original Mortgage is attached hereto as **Exhibit "B"** and is incorporated by reference.

9.     The Plaintiff is the current owner and holder of the Note and Mortgage.

10.    The Mortgage was assigned to BAC Home Loan Servicing, L.P. by virtue of an Assignment of Mortgage recorded in Volume 1650 at Page 185 of the Madison Land Records on December 22, 2009. A true and accurate copy of the Assignment of Mortgage is appended hereto as **Exhibit "C"**, and is incorporated by reference.

11.    On or about July 1, 2011, BAC Home Loan Servicing, L.P. merged with and into Bank of America, N.A. by virtue of a Certificate of Merger dated June 28, 2011. Thereafter, to correct the land records the Mortgage was assigned to Bank of America,

2

N.A., successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loan Servicing, LP by virtue of an Assignment of Mortgage recorded in Volume 1766 at Page 339 of the Madison Land Records on February 13, 2012. A true and accurate copy of the Assignment of Mortgage is appended hereto as composite **Exhibit "D"**, and is incorporated by reference.

12.    The Mortgage was assigned to the Secretary of Housing and Urban Development by virtue of an Assignment of Mortgage recorded in Volume 1858 at Page 223 of the Madison Land Records on July 1, 2013.  A true and accurate copy of the Assignment of Mortgage is appended hereto as **Exhibit "E"**, and is incorporated by reference.

13.    The Mortgage was assigned to RBS Financial Products Inc. by virtue of an Assignment of Mortgage recorded in Volume 1861 at Page 70 of the Madison Land Records on July 16, 2013.  A true and accurate copy of the Assignment of Mortgage is appended hereto as **Exhibit "F"**, and is incorporated by reference.

14.    The Mortgage was assigned to U.S. Bank, National Association, as Trustee on behalf of GRA Legal Title Trust 2013-1, by virtue of an Assignment of Mortgage recorded in Volume 1871 at Page 337 of the Madison Land Records on September 16, 2013.  A true and accurate copy of the Assignment of Mortgage is appended hereto as **Exhibit "G"**, and is incorporated by reference.

15.    The Mortgage was assigned to the Plaintiff, GMAT Legal Title Trust 2013-1, U.S. Bank, National Association, as Legal Title Trustee, by virtue of an Assignment of Mortgage dated February 15, 2014 and recorded on April 25, 2016 in Volume 1975 at Page 118 of the Madison Land Records.  A true and accurate copy of the

3

Assignment of Mortgage is appended hereto as **Exhibit "H"**, and is incorporated by reference.

16.     The Defendant, Lisa A. Williams, executed a quit claim deed on or about November 30, 2015, which was recorded in the Madison Land Records on December 15, 2015 in Volume 1961 at Page 131, and transferred her rights and title to the Property to Matthew D. Williams.

17.     The Defendants, Matthew A. Williams and Lisa A. Williams, filed for Chapter 7 Bankruptcy on April 27, 2010 and received a discharge on August 3, 2010 (Case No. 10-31257).  Consequently, the Plaintiff is not seeking to recover on the Note nor is the Plaintiff seeking to recover a deficiency judgment in this action.

18.     The Note is in default and the Plaintiff has elected to accelerate the balance due under the Note, to declare the Note to be due in full, and to foreclose the Mortgage securing the Note.

19.     The Defendants have been provided written notice of their default, in accordance with the Note and Mortgage, but they have failed and neglected to cure the default.

### FIRST COUNT
**Foreclosure of the Mortgage**

20.     The Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

21.     The following encumbrances of record are prior in right to the Mortgage and/or are not affected by this action:

a)   The Town of Madison may claim an interest in the Property by virtue of inchoate liens for real estate taxes on the Grand List of October 1, 2015 and thereafter.

4

22.    The following liens and encumbrances claim to have an interest in the Property, which liens and encumbrances are subsequent in right to the Mortgage being foreclosed by this action:

a) The Defendant, State of Connecticut, claims an interest, if any, in the Property by virtue of a Tax Lien relating to the tax liability of Mathew D. Williams and Lisa A. Williams, filed by the Department Revenue Services, in the amount of $5,173.10 recorded on August 20, 2010 in Volume 1683 at Page 211 of the Madison Land Records;

b) The Defendant, United States of America, claims an interest, if any, in the Property by virtue of a Notice of Federal Tax Lien, relating to the tax liability of Matthew D. Williams and Lisa A. Williams, and filed by the Department of Treasury – Internal Revenue Service, in the amount of $8,156.87 recorded on December 30, 2013 in Volume 1883 at Page 237 of the Madison Land Records. Said Lien was released as to Lisa A. Williams only by Release recorded on November 10, 2015 in Volume 1957 at Page 86 of the Madison Land Records; and

c) The Defendant, United States of America, claims an interest, if any, in the Property by virtue of a Notice of Federal Tax Lien, filed by the Department of the Treasury – Internal Revenue Service, in the amount of $102,622.71 recorded on December 30, 2013 in Volume 1883 at Page 238 of the Madison Land Records.

23.    The Defendant, Matthew D. Williams, holds equitable title to the Property and is therefore, the owner of the equity of redemption of the Property and, upon information and belief, is in possession of the Property.

5

24.     The Plaintiff has further caused a notice to be given to the Defendants of their rights pursuant to the Statutes pertaining to unemployment and underemployment by annexing to this Complaint a copy of the notice provided for in said Statute.

25.     The Plaintiff has caused a Notice of Lis Pendens (the "Lis Pendens") to be recorded in the Madison Land Records and a true and attested copy thereof was served evidencing the pendency of the instant action. A copy of the Lis Pendens is attached hereto as **Exhibit "I"** and incorporated as if fully set forth herein.

**WHEREFORE,** the Plaintiff seeks the following remedies:

1. Foreclosure of the Mortgage;

2. Possession of the Mortgaged Property;

3. Attorneys' fees and costs; and

4. Such other and further relief as this Court may deem just and proper.

THE PLAINTIFF

BY:

Geoffrey K. Milne, Esq.
Jennifer M. McGrath, Esq.
Hunt Leibert Jacobson, P.C.
50 Weston Street
Hartford, CT 06120
Phone: (860) 240-9140
Fax: (860) 240-9240
Email: gmilne@huntleibert.com
Juris No.: 101589

6

| | |
|---|---|
| RETURN DATE:    JUNE 28, 2016 | : SUPERIOR COURT |
| | : |
| GMAT LEGAL TITLE TRUST 2013-1, U.S. BANK, | : |
| NATIONAL ASSOCIATION, AS LEGAL TITLE | : JUDICIAL DISTRICT |
| TRUSTEE | : OF NEW HAVEN |
| | : |
| Plaintiff | : |
| | : AT NEW HAVEN |
| VS | : |
| | : |
| MATTHEW D. WILLIAMS, LISA A. WILLIAMS, | : |
| UNITED STATES OF AMERICA, and | : |
| STATE OF CONNECTICUT | : |
| | : |
| Defendants | : JUNE 8, 2016 |

## NOTICE
### (UNDER FAIR DEBT COLLECTION PRACTICES ACT 15 USC 1692 ET SEQ.)

UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE CONSIDERED TO BE VALID BY THE SIGNER OF THIS NOTICE.  HOWEVER, LEGAL ACTION MAY BE INSTITUTED WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE.

IF YOU NOTIFY THE SIGNER OF THIS NOTICE, IN WRITING, WITHIN THE THIRTY (30) DAY PERIOD, THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, THE SIGNER OF THIS NOTICE WILL OBTAIN VERIFICATION OF THIS BEST OR COPIES OF A JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFICATION OF JUDGMENT WILL BE MAILED TO YOU BY THE SIGNER OF THIS NOTICE.

UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30) DAY PERIOD, THE SIGNER OF THIS NOTICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE UNDERSIGNED IS ATTEMPTING TO COLLECT THE DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

PLAINTIFF,

By _____
Jennifer M. McGrath, Esq.
Hunt Leibert Jacobson, P.C.
Its Attorney

7

| | |
|---|---|
| RETURN DATE:      JUNE 28, 2016 | : SUPERIOR COURT |
| | : |
| GMAT LEGAL TITLE TRUST 2013-1, U.S. BANK, | : |
| NATIONAL ASSOCIATION, AS LEGAL TITLE | : JUDICIAL DISTRICT |
| TRUSTEE | : OF NEW HAVEN |
| | : |
| Plaintiff | : |
| | : AT NEW HAVEN |
| VS | : |
| | : |
| MATTHEW D. WILLIAMS, LISA A. WILLIAMS, | : |
| UNITED STATES OF AMERICA, and | : |
| STATE OF CONNECTICUT | : |
| | : |
| Defendants | : JUNE 8, 2016 |

## NOTICE TO HOMEOWNER

If you are a homeowner, under the terms of Connecticut General Statutes Section 49-31(d), et. seq., you are hereby given notice that under those statutes, if you are unemployed or underemployed you may make application to the Court to which this matter is returnable for relief from foreclosure.  You may qualify for relief under those statutes if:

YOU ARE UNEMPLOYED OR UNDER-EMPLOYED, HAVE (FOR A PERIOD OF AT LEAST TWO YEARS PRIOR TO THE COMMENCEMENT OF THIS FORECLOSURE ACTION) OWNED AND OCCUPIED THE PROPERTY BEING FORECLOSED AS YOUR PRINCIPAL RESIDENCE AND HAVE NOT RECEIVED AN EMERGENCY MORTGAGE ASSISTANCE LOAN AND HAVE NOT APPLIED FOR EMERGENCY MORTGAGE LOAN ASSISTANCE FOR TWO YEARS BEFORE THE APPLICATION UNDER P.A. 93-414. YOU MAY BE ENTITLED TO CERTAIN RELIEF UNDER THESE STATUTES.  YOU SHOULD CONSULT AN ATTORNEY TO DETERMINE YOUR RIGHTS UNDER THOSE STATUTES.

In order to qualify for relief under those statutes, you must make application for protection from foreclosure within 25 DAYS of the filing date.

8

Exhibit A

# ADJUSTABLE RATE NOTE

Multistate
CT

FHA Case No. ▉▉▉▉

DECEMBER 29, 2008
[Date]

226 SCOTLAND ROAD, MADISON, CT  06443
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means SOCIETY FINANCIAL CORPORATION

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of THREE HUNDRED EIGHTY FIVE THOUSAND SEVEN HUNDRED AND  NO/100.

Dollars (U.S. $   385,700.00   ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at a rate of   SIX AND ONE QUARTER percent (   6.250   %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5(C) of this Note.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MARCH 1ST   ,   2009   . Any principal and interest remaining on the first day of   FEBRUARY   , 2039   , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at 276 MAIN STREET, FARMINGTON, CT 06032
or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount
Initially, each monthly payment of principal and interest will be in the amount of U.S. $   2,374.83   . This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described. in the Security Instrument. This amount may change in accordance with Paragraph 5(E) of this Note.

### 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Date
The interest rate may change on the first day of   APRIL   ,   2014   , and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

(B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as

610  022634851  N  001  001

defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in Paragraph 7(B)). Lender will give Borrower notice of the new Index.

**(C)  Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of ONE AND THREE QUARTERS percentage point(s) ( 1.750 %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

**(D)  Limits on Interest Rate Changes**

The existing interest rate will never increase or decrease by more than ONE percentage point(s) ( 1.000 %) on any single Change Date. The interest rate will never be more than FIVE percentage points ( 5.000 %) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

**(E)  Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F)  Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G)  Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

**6. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**7. BORROWER'S FAILURE TO PAY**

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000 %) of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent

Initials: _JADW_ ✗

VMP-590 (9608)

default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**8. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
MATTHEW D WILLIAMS            -Borrower          LISA A WILLIAMS           -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                    -Borrower

VMP-590 (9508)                              Page 3 of 3

Without recourse, pay to the order of
Taylor, Bean & Whitaker Mortgage Corp.
Society Financial Corporation

Erla Carter-Shaw

Attorney-In-Fact


Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
     Mortgage Corp.

Erla Carter-Shaw, E.V.P.

## NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Note holder endorsements to evidence transfer of Interest.

| | |
|---|---|
| **Collateral ID:** | ▮▮▮▮▮▮▮▮ |
| **Note Amount:** | $ 385,700.00 |
| **Note Date:** | 12/29/2008 |
| **Originator:** | Society Financial Corp. |
| **Borrower(s):** | Matthew D Williams and Lisa A Williams |
| **Property Address:** | 226 SCOTLAND ROAD |
| | MADISON, CT 06443 |

Pay to the order of, without recourse:

**RBS Financial Products Inc.**

**Assignor:**   SECRETARY OF HOUSING AND URBAN DEVELOPMENT
By RBS Financial Products Inc., Its Attorney In Fact
By RMS Asset Management, LLC, Its Attorney In Fact

By:_____

David Sklar
Chief Financial Officer

M3 ID:  210017
Servicer LN No.: ▮▮▮▮▮▮▮

## NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Note holder endorsements to evidence transfer of interest.

| | |
|---|---|
| **Collateral ID:** | ▇▇▇▇▇▇ |
| **Note Amount:** | $385,700.00 |
| **Note Date:** | 12/29/2008 |
| **Originator:** | SOCIETY FINANCIAL CORP. |
| **Borrower(s):** | Matthew D Williams and Lisa A Williams |
| **Property Address:** | 226 SCOTLAND ROAD |
| | MADISON, CT 06443 |

Pay to the order of, without recourse:

GRA Legal Title Trust 2013-1, U.S. Bank, National Association, as Legal Title Trustee

**Assignor:**   RBS Financial Products Inc
By RMS Asset Management, LLC, its Attorney-In-Fact

By:_____

David Sklar, Chief Financial Officer

M3 ID: 210017
Servicer LN No.: ▇▇▇▇▇▇

▇▇▇▇▇▇
MATTHEW D WILLIAMS          KASOTA ·
GARR                        GMAT2D131-PR1V

B

## NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Note holder endorsements to evidence transfer of interest.

| | |
|---|---|
| **Collateral ID:** | ▮▮▮▮▮▮ |
| **Note Amount:** | $385,700.00 |
| **Note Date:** | 12/29/2008 |
| **Originator:** | SOCIETY FINANCIAL CORP. |
| **Borrower(s):** | Matthew D Williams and Lisa A Williams |
| **Property Address:** | 226 SCOTLAND ROAD |
| | MADISON, CT 06443 |

Pay to the order of, without recourse:

**GMAT Legal Title Trust 2013-1, U.S. Bank, National Association, as Legal Title Trustee**

**Assignor:**  **GRA Legal Title Trust 2013-1, U.S. Bank, National Association, as Legal Title Trustee**
By RMS Asset Management, LLC, Its Attorney-In-Fact

By: _____

David Sklar, Chief Financial Officer

M3 ID: 210017
Servicer LN No.: ▮▮▮▮▮▮

MATTHEW D WILLIAMS        KASOTA
GARR                      GMAT20131-PRIV

8

## NOTE ALLONGE

Loan Number: ▉▉▉▉▉▉▉▉

NOTE AMOUNT:     **$385,700.00**

NOTE DATE:       **12/29/2008**

ORIGINATOR:      **SOCIETY FINANCIAL CORPORATION**

Borrower Name:   **MATTHEW D WILLIAMS**

                 **LISA A WILLIAMS**

Property Address:   **226 SCOTLAND ROAD, MADISON, CT 06443**

PAY TO THE ORDER OF, WITHOUT RECOURSE:

ASSIGNOR:

**GMAT LEGAL TITLE TRUST 2013-1, U.S. BANK, NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE BY RUSHMORE LOAN MANAGEMENT SERVICES LLC ITS APPOINTED ATTORNEY IN FACT**

BY: _____

Print Name:  LORRIE WHITELOCK
Title:  VICE PRESIDENT

# Exhibit B

VOL: 1592 PG: 337
Inst:      33

Return To:
TAYLOR, BEAN AND WHITAKER

1417 N. MAGNOLIA AVENUE
OCALA, FL  34475



610  022634851  D2  001  001

Prepared By:
SOCIETY FINANCIAL CORPORATION
276 MAIN STREET
FARMINGTON,  CT 06032

---

[Space Above This Line For Recording Data]

State of Connecticut

## OPEN-END MORTGAGE

FHA Case No.

MIN

---

THIS MORTGAGE ("Security Instrument") is given on   DECEMBER 29TH, 2008
The Mortgagor is  MATTHEW D WILLIAMS AND LISA A WILLIAMS

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. SOCIETY FINANCIAL CORPORATION

("Lender") is organized and existing under the laws of  CONNECTICUT                                    , and
has an address of 276 MAIN STREET, FARMINGTON,  CT 06032
. Borrower owes Lender the principal sum of
THREE HUNDRED EIGHTY FIVE THOUSAND SEVEN HUNDRED AND  NO/100.
Dollars (U.S. $     385,700.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on   FEBRUARY 1ST,
2039          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the

FHA Connecticut Open-End Mortgage
with MERS - 4/96
Amended 2/01
VMP-4N(CT) (0508)
Page 1 of 8                     Initials: 
VMP Mortgage Solutions, Inc.

VOL: 1592  PG:   338
Inst:         33

Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in NEW HAVEN                                                                                County, Connecticut:

SEE ATTACHED LEGAL DESCRIPTION RIDER

Parcel ID Number: ▓▓▓▓▓

which has the address of                               226 SCOTLAND ROAD                                [Street]

                    MADISON                             [City], Connecticut    06443        [Zip Code]

("Property Address");

      TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      Borrower and Lender covenant and agree as follows:

      UNIFORM COVENANTS.

      1. .Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

      2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

VMP-4N(CT) (0509)                                        Page 2 of 8                                        Initials: _____

VOL: 1592 PG: 339
Inst: 33

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating

Initials: ___

VOL: 1592 PG: 340
Inst: 33

circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

 -4N(CT) (0509)          Page 4 of 8          Initials: 

VOL: 1592 PG: 341
Inst: 33

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent these are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: _MWBerlew_

VMP-4N(CT) (0509)

Page 6 of 8

VOL: 1592 PG: 342
Inst: 33

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials _____

VMP-4N(CT) (9509)

Page 8 of 8

VOL: 1592 PG: 343
Inst: 33

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider  ☐ Growing Equity Rider  ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

Initials: 

VOL: 1592 PG: 344
Inst: 33

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____(Seal)
                                          MATTHEW D WILLIAMS                -Borrower

_____          _____(Seal)
                                          LISA A WILLIAMS                   -Borrower

_____(Seal)      _____(Seal)
                      -Borrower                                            -Borrower

_____(Seal)      _____(Seal)
                      -Borrower                                            -Borrower

_____(Seal)      _____(Seal)
                      -Borrower                                            -Borrower

STATE OF CONNECTICUT,   NEW HAVEN                              County ss:
    The foregoing instrument was acknowledged before me this  DECEMBER 29TH, 2008
by MATTHEW D WILLIAMS AND LISA A WILLIAMS

My Commission Expires:                    _____

                                          Commissioner of the Superior Court
                                          Notary Public

VMP-4N(CT) (0503)                   Page 8 of 8

VOL: 1592 PG: 345
Inst: 33

Schedule A

All that certain piece or parcel of land with the improvements thereon, situated
in the Town of Madison, County of New Haven and State of Connecticut, known as #226
Scotland Road, containing 44,360 square feet, more or less, and shown as property
of Glen L. and Delores M. Kyttle on a map entitled "Scotch Glen Lot Layout Being
Developed by C.L. Kenney & Son, Inc., Scotland Road, Madison, Conn., Scale 1"=
40', Feb. 23, 1967" on file in the Madison Town Clerk's office, said premises
being bounded:

| | |
|---|---|
| NORTH & NORTHEAST: | by Scotland Road, as shown on said map, 219.61 feet, by a bent line; |
| SOUTHEAST: | by Lot #2, as shown on said map, 280.00 feet; |
| SOUTHWEST: | by a portion of Lot #5, as shown on said map, 91.34 feet; |
| WEST: | by a 25 foot strip, being a portion of said Lot #5 as shown on said map, 280 feet. |

RECEIVED FOR RECORD
Jan 06,2009  10:33A
DOROTHY C. BEAN
TOWN CLERK
MADISON, CT

# Exhibit C

After recording please return to:
HUNT LEIBERT JACOBSON PC
50 Weston Street
Hartford CT 06120

VOL: 1650 PG: 185
Inst: 4488

## ASSIGNMENT OF MORTGAGE

KNOW YE THAT Mortgage Electronic Registration Systems, Inc. as Nominee for Society Financial Corporation, ("Assignor"), having an office and place of business at 3300 SW 34th Avenue, Suite 101, Ocala, FL 34474 for the consideration of One Dollar and other valuable considerations, does hereby assign to BAC Home Loans Servicing, L.P., ("Assignee"), having an address of 101 South Tryon Street, Charlotte, NC 28255, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Matthews d. Williams and Lisa Williams to Mortgage Electronic Registration Systems, Inc. as Nominee for Society Financial Corporation dated December 29, 2008 and recorded on January 06, 2009 in Volume 1592 at Page 337 of the Madison Land Records, in or to the property described in said mortgage deed situated in the Town of Madison, County of New Haven and State of Connecticut, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee, its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded,

IN WITNESS WHEREOF, on this 30th day of November, 2009 said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by Benjamin T. Staskiewicz, who is duly authorized and empowered.

Signed, sealed and delivered
in the presence of:

By: _____
Laura Mekraus

_____
Lynda Ferguson

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SOCIETY FINANCIAL CORPORATION

By: _____
Benjamin T. Staskiewicz

Its: Assistant Secretary and
Vice President

## ACKNOWLEDGMENT

State of Connecticut
County of Hartford

On November 30, 2009 before me, Jennifer Tiso, personally appeared Benjamin T. Staskiewicz, Assistant Secretary and Vice President of MERS, Inc. who provided to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he has executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____
Jennifer Tiso
Notary Public
My Commission Expires 11/30/2010

RECEIVED FOR RECORD
Dec 22, 2009  02:14P
DOROTHY C. BEAN
TOWN CLERK
MADISON, CT

PROPERTY:
226 Scotland Road
Madison, CT
Williams, Matthew D. & Williams, Lisa
04476-02395



# Exhibit D

```
VOL: 1766 PG:  339
Inst:       512
```

Recording Requested By:
Bank of America
Prepared By: Diana DeAvila
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

**DocID#    9562363485164412**

Property Address:
216 Rentland Rd
Madison, CT 06443-3414
CTB-AM 17121623        3/2/2012

This space for Recorder's use

MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 451 7TH ST,SW #B-133, WASHINGTON DC 20410 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:        SOCIETY FINANCIAL CORPORATION
Borrower(s):            MATTHEW D WILLIAMS AND LISA A WILLIAMS
Date of Mortgage:      12/29/2008
Original Loan Amount:  $385,700.00

Recorded in Madison Township, CT on: 1/6/2009, book 1592, page 337 and instrument number 33

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
2/2/12

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Alice Roe_

Alice Howe Assistant Secretary

Witness: _Amanda Stackhouse_

Witness: _Bevady Brooks_

State of California
County of Ventura

On __FEB 0 2 2012__ before me, ___George A. Pinedo___, Notary Public, personally appeared
Alice Rowe
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public:  George A. Pinedo        (Seal)
My Commission Expires:  June 14, 2013

GEORGE A. PINEDO
COMM. #1853836
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 14, 2013

RECEIVED FOR RECORD
Feb 13, 2012  11:13A
ROSE LODICE
TOWN CLERK
MADISON, CT

# Exhibit E

#60 2013 2437#

Inst# 2437 Vol# 1858 PG: 223

Recording requested by:
BANK OF
AMERICA,N.A.,SUCCESSOR BY
MERGER TO BAC HOME LOANS
SERVICING,LP FKA COUNTRYWIDE
HOME LOANS SERVICING,LP

When recorded mail to:
TO SERVICE COMPANY
4000 W. METROPOLITAN
DRIVE,SUITE 400
CONTACT:JULIE KIDDER
(714)480-5652
ORANGE, CA 92868
Attn: ASSIGNMENT UNIT

CORPORATION ASSIGNMENT OF MORTGAGE
Branch/Source Code 603 12108          Doc. ID# 95002265485170532

For value received, the undersigned, BANK OF AMERICA,N.A.,SUCCESSOR BY MERGER
TO BAC HOME LOANS SERVICING,LP FKA COUNTRYWIDE HOME LOANS SERVICING,LP, 101
SOUTH MARENGO AVE 4TH FLOOR,PASADENA,CA,91101, hereby grants, assigns and
transfers to:
SECRETARY OF HOUSING AND URBAN DEVELOPMENT
451 7TH STREET, S.W., WASHINGTON,D.C. 20410

All its interest under that certain Mortgage dated 12/29/08, executed by:
MATTHEW D WILLIAMS and LISA WILLIA, Mortgagor as per MORTGAGE recorded as
Instrument No. 33 1A on 1-6-09 in Book 1572 at Page
277 of official records in the County Recorder's Office of NEW HAVEN
County, CONNECTICUT.
    Tax Parcel = 00382600.   MADISON TOWN TAX COLLECTOR
Original Mortgage $385,700.00
226 SCOTLAND ROAD, MADISON, CT 06443

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated: 05/28/2013      BANK OF AMERICA,N.A.,SUCCESSOR BY MERGER TO BAC HOME
                       LOANS SERVICING,LP FKA COUNTRYWIDE HOME LOANS
                       SERVICING,LP.

                  By
                       LUIS ROLDAN, ASSISTANT VICE PRESIDENT

Witness:
           LISA NIX

State of California
County of Los Angeles

On 05/28/2013 before me, EDGAR ANTONIO CRUZ , Notary Public, personally
appeared LUIS ROLDAN, who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:
           EDGAR ANTONIO CRUZ

EDGAR ANTONIO CRUZ
Commission # 1967844
Notary Public - California
Los Angeles County
My Comm Expires Jan 27, 2016

Prepared by: RALPH FLORES.
101 S MARENGO AVE, 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 456-1890

RECEIVED FOR RECORD
Jul 01,2013  03:19P
NANCY J. MARTUCCI
TOWN CLERK
MADISON, CT

Exhibit F

W&D 2013 2630#

Inst: 2630 Vol: 1861 PG: 70

Recording requested by:
SECRETARY OF HOUSING AND
URBAN DEVELOPMENT BY RBS
FINANCIAL PRODUCTS INC,ITS
ATTORNEY IN FACT

When recorded mail to:
TD SERVICE COMPANY
4000 W. METROPOLITAN
DRIVE,SUITE 400
CONTACT:JULIE KIDDER
(714)480-5652
ORANGE, CA 92868
Attn: ASSIGNMENT UNIT

**CORPORATION ASSIGNMENT OF MORTGAGE**
Branch/Source Code 603 1210B          Doc. ID# 57402263485194396

For value received, the undersigned, SECRETARY OF HOUSING AND URBAN
DEVELOPMENT BY RBS FINANCIAL PRODUCTS INC,ITS ATTORNEY IN FACT, 451 7TH
STREET, S.W., WASHINGTON,D.C. 20410, hereby grants, assigns and transfers to:
RBS FINANCIAL PRODUCTS INC.
600 WASHINGTON BLVD., STAMFORD, CT 06901

All its interest under that certain Mortgage dated 12/29/06, executed by:
MATTHEW D WILLIAMS and LISA WILLIAM Mortgagor, as per MORTGAGE recorded as
Instrument No. 53 c 6. , on 1/6/2013 in Book 1591 ct. Page
3575 £ of official records in the County Recorder's Office of NEW HAVEN
County, CONNECTICUT.
  Tax Parcel = 00352600D,   MADISON TOWN TAX COLLECTOR
  Original Mortgage $385,700.00     * Lisa A Williams E.E.
226 SCOTLAND ROAD, MADISON, CT 06443

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated: 6/13/2013      SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY RBS
                      FINANCIAL PRODUCTS INC,ITS ATTORNEY IN FACT
                      BY RMS ASSET MANAGEMENT, LLC, ITS ATTORNEY IN FACT

                      By

                                                JACK GETZELMAN, CEO

Witness:                     James R Green
                      GREGORY DEHOA

State of California
County of Orange

On 6-13-2013  before me,  G. MELTON               Notary Public,
personally appeared  Jack Getzelman  who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California  that the foregoing paragraph is true and
correct.

Witness my hand and official seal.

Signature:                               G. MELTON
              G. MELTON                   Commission # 1930083
                                          Notary Public - California
                                          Orange County
                                          My Comm. Expires Mar 26, 2016

Prepared by: RALPH FLORES
101 S MARENGO AVE,  4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 456-1890

RECEIVED FOR RECORD
Jul 16,2013  09:01A
NANCY J. MARTUCCI
TOWN CLERK
MADISON, CT

Exhibit G

‖‖‖‖ ‖‖‖‖ ‖‖‖‖ *b0 2013 3478*

*Prepared by:*
RMS Asset Management, LLC
18 Technology Drive, Ste 210
Irvine, CA 92618

Inst: 3478 Vol: 1871 PG: 337

*When Recorded Return to:*
TD SERVICE COMPANY
4000 W METROPOLITAN DRIVE, STE 400
ORANGE, CA 92868

M3 ID 210017, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮                                    The space above for recorder's use only

APN: 00382600              Collateral ID No. ▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

RBS Financial Products Inc., (the "Assignor"), having its principal place of business at 600 WASHINGTON BLVD., STAMFORD, CT 06901 in consideration of the sum of One Dollars and No/00 Cents ($1.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged received from or on behalf of:

**U.S. Bank, National Association, as trustee on behalf of GRA Legal Title Trust 2013-1**

("Assignee"), having its principal place of business at 60 Livingston Ave., EP-MN-WS3D, St Paul, MN 55107, Assignor, does hereby grant, bargain, sell, assign, transfer and set over to Assignee, its successors and/or assigns, that certain Mortgage executed by Matthew D Williams and Lisa A Williams, original Lender, Society Financial Corp., dated 12/29/2008, as described in that certain Mortgage recorded 1/6/2009, in Book # 1592, Page # 3337, Document # 33 in New Haven County, state of CT, together with the Note or other obligation secured by said Mortgage and monies due and to become due thereon, including interest thereon.

Property Address:   226 SCOTLAND ROAD
                    MADISON, CT 06443

Legal Description:   SEE LEGAL DESCRIPTION ATTACHED HERETO.

To have and to hold the same unto the Assignee, its successors and/or assigns forever.

IN WITNESS WHEREOF, the Assignor has caused this Assignment of Mortgage to be executed in its name by its officer duly authorized this day, 8/1/2013, in the presence of:

                        RBS Financial Products Inc.
                        By RMS Asset Management, LLC, its Attorney in Fact

                  By: _____
Witness  James R Ouano    David Sklar
                          Chief Financial Officer
Witness  Greg P Ochoa

STATE OF California
COUNTY OF Orange

On 8/1/2013, before me, G Melton, a Notary Public, personally appeared David Sklar, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_____ (Seal)

G. MELTON
Commission # 1930083
Notary Public - California
Orange County
My Comm. Expires Mar 25, 2015

VOL: 1592 PG: 345
Inst: 33

VOL: 1871 PG: 338
Inst: 3478

## Schedule A

All that certain piece or parcel of land with the improvements thereon, situated in the Town of Madison, County of New Haven and State of Connecticut, known as #226 Scotland Road, containing 44,360 square feet, more or less, and shown as property of Glen L. and Delores N. Kyttle on a map entitled "Scotch Glen Lot Layout Being Developed by C.L. Kenney & Son, Inc., Scotland Road, Madison, Conn., Scale 1"= 40', Feb. 23, 1967" on file in the Madison Town Clerk's office, said premises being bounded:

NORTH & NORTHEAST:     by Scotland Road, as shown on said map, 219.61 feet,
                       by a bent line;
SOUTHEAST:             by Lot #2, as shown on said map, 280.00 feet;
SOUTHWEST:             by a portion of Lot #5, as shown on said map,
                       91.34 feet;
WEST:                  by a 25 foot strip, being a portion of said Lot #5
                       as shown on said map, 280 feet.

TAx ID: ▮▮▮▮▮▮

RECEIVED FOR RECORD
Jan 06,2009  10:33A
DOROTHY C. BEAN
TOWN CLERK
MADISON, CT

RECEIVED FOR RECORD
Sep 16,2013  04:09P
NANCY J. MARTUCCI
TOWN CLERK
MADISON, CT

M3: ▮▮▮▮▮▮

# Exhibit H

Recording requested by:
GRA Legal Title Trust 2013-1, U.S.
Bank, National Association, as Legal
Title Trustee

*60 2016 980*

Inst:    980 Vol: 1975 PG: 118

When recorded mail to:
TD Service Company
4000 W METROPOLITAN DRIVE,
SUITE 400
ORANGE, CA 92868
Attn: Sarah Kennedy
(714)480-5652

---

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, the undersigned, GRA Legal Title Trust 2013-1, U.S. Bank,
National Association, as Legal Title Trustee having its address at 60 Livingston Ave.,
EP-MN-WS3D, St. Paul, MN 55107 hereby grants, assigns and transfers to:
   GMAT Legal Title Trust 2013-1, U.S. Bank, National Association, as Legal Title
   Trustee
   60 Livingston Ave., EP-MN-WS3D, St. Paul, MN 55107
All its interest under that certain Mortgage dated 12/29/2008, executed by:
Matthew D Williams and Lisa A Williams, Mortgagor as per MORTGAGE recorded as
Instrument No. 33 on 1/6/2009 in Book 1592 Page 3337 of official records in the
County Recorder's Office of New Haven County, CONNECTICUT.
   Tax Parcel = 00382600
Original Mortgage $385,700.00
226 SCOTLAND ROAD, MADISON, CT 06443

Together with the Note or Notes therein described or referred to, the money due
and to become due thereon with interest, and all rights accrued or to accrue under
said Mortgage.

Dated: 2/15/2014          GRA Legal Title Trust 2013-1, U.S. Bank, National
                          Association, as Legal Title Trustee
                          By RMS Asset Management, LLC, its Attorney-In-Fact

                          By: _____
                               Jack Getzelman, Chief Executive Officer

Witness: _____
             Greg Ochoa

State of California
County of Orange

On 2/15/2014 before me, G. Melton, Notary Public, personally appeared Jack
Getzelman, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
                G. Melton

Prepared by: Duy Duong
18 Technology Dr., Ste 210
Irvine, CA 91618
Phone#: (310) 450-5858

G. MELTON
Commission # 1930083
Notary Public - California
Orange County
My Comm. Expires Mar 25, 2015

I HEREBY CERTIFY that the above and foregoing
is a true copy of the document recorded on
April 25, 2016   at   8:40 am   in
the Madison Town Clerks Office.
ATTEST _____
                          Town Clerk

M3:210017

RECEIVED FOR RECORD
Apr 25, 2016   08:40A
NANCY J. MARTUCCI
TOWN CLERK
MADISON, CT

# Exhibit I

Record and Return to:
Hunt Leibert Jacobson, P.C.
50 Weston Street
Hartford, CT 06120

| | | |
|---|---|---|
| RETURN DATE: JUNE 28, 2016 | : | SUPERIOR COURT |
| | : | |
| GMAT LEGAL TITLE TRUST 2013-1, U.S. BANK, | : | |
| NATIONAL ASSOCIATION, AS LEGAL TITLE | : | JUDICIAL DISTRICT |
| TRUSTEE | : | OF NEW HAVEN |
| | : | |
| Plaintiff | : | |
| | : | AT NEW HAVEN |
| VS | : | |
| | : | |
| MATTHEW D. WILLIAMS, LISA A. WILLIAMS, | : | |
| UNITED STATES OF AMERICA, and | : | |
| STATE OF CONNECTICUT | : | |
| | : | |
| Defendants | : | JUNE 8, 2016 |

### LIS PENDENS

Notice is hereby given of the pendency of a civil action between the above-named

Plaintiff and against Matthew D. Williams of 226 Scotland Road, Madison, Connecticut,

Lisa A. Williams of 36 Bliss Memorial Drive, Unionville, Connecticut, the United States

of America with an office located at 157 Church Street, Floor 25, New Haven,

Connecticut and at 950 Pennsylvania Avenue, NW, Washington, D.C., and the State of

Connecticut, with an office located at 55 Elm Street, Hartford, Connecticut by Writ dated

June 8, 2016 and made returnable to the Connecticut Superior Court, Judicial District of

New Haven at New Haven, which action is brought to foreclose a certain mortgage from

the Defendants, Matthew D. Williams and Lisa A. Williams, to the above-named

Plaintiff, which Mortgage was dated December 29, 2008 and recorded January 6, 2009 in

Volume 1592 at Page 337 of the Madison Land Records.

1

In said Action, the following items are claimed:

1. Foreclosure of the Mortgage;

2. Possession of the Mortgaged Property;

3. Attorneys' fees and costs; and

4. Such other and further relief as this Court may deem just and proper.

The Property the Plaintiff seeks an interest in and to is located in the Town of Madison in the State of Connecticut and is known as 226 Scotland Road and is more particularly bounded and described as set forth in Schedule A attached hereto.

Dated in Hartford, Connecticut this 8th day of June, 2016.

                                        THE PLAINTIFF

                              BY:
                                        Geoffrey K. Milne, Esq.
                                        Jennifer M. McGrath, Esq.
                                        Hunt Leibert Jacobson, P.C.
                                        50 Weston Street
                                        Hartford, CT 06120
                                        Phone: (860) 240-9140
                                        Fax: (860) 240-9240
                                        Email: gmilne@huntleibert.com
                                        Juris No.: 101589

2

Schedule A

All that certain piece or parcel of land with the improvements thereon, situated in the Town of Madison, County of New Haven and State of Connecticut, known as #226 Scotland Road, containing 44,360 square feet, more or less, and shown as property of Glen L. and Delores M. Kyttle on a map entitled "Scotch Glen Lot Layout Being Developed by C.L. Kenney & Son, Inc., Scotland Road, Madison, Conn., Scale 1"= 40', Feb. 23, 1967" on file in the Madison Town Clerk's office, said premises being bounded:

NORTH & NORTHEAST:   by Scotland Road, as shown on said map, 219.61 feet, by a bent line;

SOUTHEAST:   by Lot #2, as shown on said map, 280.00 feet;
SOUTHWEST:   by a portion of Lot #5, as shown on said map, 91.34 feet;

WEST:   by a 25 foot strip, being a portion of said Lot #5 as shown on said map, 280 feet.

# APPENDIX E



P.O Box 55004
Irvine, CA 92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

**PAYOFF STATEMENT**

August 02, 2016

Crystal Baxter
Rlms

Loan No:  7600014272
Loan Type:  Conventional
Noteholder: Gmat Lgl Title Tr 2013-1

RE:
Matthew D Williams
Lisa A Williams
15480 Laguna Canyon Roa
Irvine CA 92618

Property Address:
226 Scotland Road
Madison CT 06443

************************************************************
ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW.
************************************************************
These figures are good to August 31, 2016.
This loan is due for the December 01, 2009 payment.
The current total unpaid Principal Balance is:          $      382,209.06
Interest at  6.25000%                                          146,976.92
Escrow/Impound Overdraft                                        51,459.17
Suspense Balance                                               -1,733.32
Unpaid Late Charges                                             3,667.95
Recoverable Corporate Advances                                 25,668.99
Recon/Recording Fee                                                76.00
Property Inspection                                                16.50
Short Interest                                                       .00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $      608,341.27

2nd Principal Balance                                               .00
Deferred Interest Balance                                           .00

The total unpaid Principal Balance includes the 2nd Principal Balance,
Deferred Interest Balance, Principal Reduction Amount (HAMP incentive)
and/or a Forbearance Amount.



EQUAL HOUSING
LENDER